UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MAHESH KHATRI,                          )        CASE No. 5:18CV2962
                                        )
            Plaintiff,                   )
      v.                                 )        JUDGE JOHN R. ADAMS
                                        )
THE OHIO STATE UNIVERSITY,               )        Magistrate Judge George J. Limbert
*et al.*,                                )
                                        )
            Defendants.                  )        REPORT AND RECOMMENDATION
                                        )        OF MAGISTRATE JUDGE
                                        )

 

     This matter is before the Court on a partial motion for judgment on the pleadings (ECF Dkt. #10) filed by defendant Ohio State University ("OSU") on May 2, 2019 and a motion to dismiss Plaintiff's first amended complaint (ECF Dkt. #25) filed by defendants David Benfield, Yeshia Mohamed "Mo" Saif, Chang-Won Lee, Gireesh Rajashekara, Elayne Siegfried and OSU (collectively, "Defendants") filed on July 29, 2019. Plaintiff Mahesh Khatri filed a memorandum in opposition to both motions on November 14, 2019. ECF Dkt. #39. Defendants filed a reply brief on November 29, 2019. ECF Dkt. #42. For the following reasons, the undersigned recommends that the Court (1) DENY OSU's motion for judgment on the pleadings (ECF Dkt. #10) as MOOT, (2) GRANT Defendants' motion to dismiss (ECF Dkt. #25), and (3) DENY Plaintiff's partial motion for judgment on the pleadings filed on September 18, 2019 (ECF Dkt. #31).

## I.      FACTUAL AND PROCEDURAL HISTORY

     On December 26, 2018, Plaintiff Mahesh Khatri, pro se, filed his original complaint against OSU in this Court. ECF Dkt. #1. Plaintiff brought claims for (1) disability discrimination under the Americans with Disabilities Act ("ADA"),  42 U.S.C. § 12112; (2) discrimination based on religion under Title VII, citing 42 U.S.C. §§ 2000e; and (3) a violation of the First Amendment. *Id.* at 1-2. In his prayer for relief, Plaintiff requested injunctive relief and monetary damages, including a request for $10,000,000. *Id.* at 19-20. After being granted a time extension, OSU filed an Answer on February 22, 2019. ECF Dkt. #s 7, 8. On May 2, 2019, OSU filed Partial Motion for Judgment

on the Pleadings. ECF Dkt. #10.

Pursuant to a Case Management Conference, the Court set June 24, 2019 as the deadline to amend pleadings and add parties. ECF Dkt. #13 at 4. On June 24, 2019, Plaintiff filed an Amended Complaint against OSU and added new party defendants David Benfield, Yeshia Mohamed "Mo" Saif, Chang-Won Lee, Gireesh Rajashekara, and Elayne Siegfried. ECF Dkt. #16. In his Amended Complaint, Plaintiff brings the following claims: (1) First Amendment retaliation under 42 U.S.C. § 1983 against all Defendants and against the individually-named defendants in their official and personal capacities; (2) Conspiracy to interfere with Civil Rights under 42 U.S.C. § 1983 against all Defendants and against the individually-named defendants in their official and personal capacities; (3) Intimidation under O.R.C. § 2921.03(A) & (C) against all Defendants and against the individually-named defendants in their official and personal capacities; (4) Civil liability for criminal acts under O.R.C. § 2307.60(A)(1) against all Defendants and against the individually-named defendants in their official and personal capacities; (5) Civil conspiracy under Ohio Common Law against all Defendants and against the individually-named defendants in their official and personal capacities; (6) Disability Discrimination under the ADA, 42 U.S.C. § 12112 and Rehabilitation Act against all Defendants and against the individually-named defendants in their official and personal capacities; and (7) Discrimination based on religion and national origin under Title II against all Defendants and against the individually-named defendants in their official and personal capacities, except for Dr. Rajashekara. ECF Dkt. #16. In his prayer for relief, Plaintiff requested injunctive relief and monetary damages. *Id.* at 28-29. The underlying facts and allegations in the original and amended complaint otherwise appear virtually identical.

Subsequently, on July 29, 2019, the Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint (ECF Dkt. #16). ECF Dkt. #25. On September 18, 2019, Plaintiff filed a Partial Motion for Judgment on the Pleadings, in which Plaintiff cited Fed. R. Civ. P. 56 and requested the Court to grant "partial summary judgment" in his favor. ECF Dkt. #31. On September 20, 2019, Defendants filed a Motion for Telephone Status Conference or, in the Alternative, a Motion to Deny Plaintiff's Partial Motion for Judgment on the Pleadings Pending a Ruling on Defendants' Motion to Dismiss, and Motion to Extend Deadlines. ECF Dkt. #32. Plaintiff responded on September 26,

-2-

2019 by filing a Memorandum in Opposition to Extend Time and a Motion for Judgment on the Pleadings and Partial Summary Judgment. ECF Dkt. #34.

On September 27, 2019, the undersigned filed an order denying Defendants' request (ECF Dkt. #32) for a telephone status conference but granting Defendants' proposed alternative to defer consideration of Plaintiff's Partial Motion for Judgment on the Pleadings (ECF Dkt. #31) pending a ruling on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF Dkt. #25). ECF Dkt. #35. The undersigned found that although entitled "Partial Motion for Judgment on the Pleadings," Plaintiff filed it as a motion for summary judgment, which was early considering the discovery deadline was extended to December 30, 2019 and the new deadline to file dispositive motions is January 28, 2020. ECF Dkt. #35. However, upon reconsideration, the undersigned is able to currently dispose of Plaintiff's September 18, 2019 filing due to overlap. ECF Dkt. #31.

On November 14, 2019, Plaintiff filed a memorandum in opposition to OSU's Partial Motion for Judgment on the Pleadings (ECF Dkt. #10) and Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF Dkt. #25). ECF Dkt. #39. Defendants filed a reply brief in support of their motion to dismiss on November 29, 2019. ECF Dkt. #42.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay the trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017); *Boulger v. Woods*, 917 F.3d 471, 478 (6th Cir. 2019).

After plaintiff files an amended complaint, the amended complaint will generally replace the original complaint, rendering the original complaint null and void. *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 706 n.2 (1982) (White, J., concurring in part & dissenting in part on other grounds, joined by Powell, Rehnquist, & O'Connor, JJ.); *Drake v. City of Detroit, Michigan,* 266 Fed.Appx. 444, 448 (6th Cir. 2008) ("[A]n amended complaint supercedes all prior complaints," rendering an original complaint a "nullity.") (unpublished); *Grubbs v. Smith*, 86 F.2d

275, 275 (6th Cir. 1936) ("[A]s a matter of law the amended and substituted petition superseded the prior pleadings in the case."). The Sixth Circuit has recognized an exception to this general rule when the party "evinces an intent for the amended pleading to supplement rather than supersede the original pleading." *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) ("An amended pleading supersedes a former pleading if the amended pleading 'is complete in itself and does not refer to or adopt a former pleading.'").

Here, OSU filed a motion for judgment on the pleadings after the original complaint and answer were filed. ECF Dkt. #10. Thereafter, Plaintiff amended his complaint, adding new party defendants and adding claims. ECF Dkt. #16. Rather than file an answer to the amended complaint, Defendants jointly filed a motion to dismiss. ECF Dkt. #25. Given that there has not been a new round of pleadings, the Court should DENY OSU's motion for judgment on the pleadings as MOOT. ECF Dkt. #10. Nevertheless, OSU reiterated its arguments in greater detail in the instant motion to dismiss, which is primarily at issue.

An amended pleading may "relate back" to the date of the original pleading under certain circumstances, including when the claims in the amendment concern the same  "conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B). In addition, when an amended complaint adds new defendants, such defendants are required to have received actual or constructive notice of the lawsuit before the statute of limitations period expired in order for the amended complaint to relate back to the filing of the original complaint. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). The relation back doctrine is particularly relevant for determining whether a claim was filed within the applicable statute of limitations period. *E.g.*, *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000). Here, the amended complaint contains identical facts and allegations as the original complaint, and the original complaint specifically named the individually-named defendants throughout the facts section, providing constructive notice of the lawsuit. ECF Dkt. #s 1, 16. As such, the undersigned recommends that the Court find that amended complaint relates back to the date of the original complaint for statute of limitations purposes.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). In deciding a 12(b)(6) motion, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.   LAW AND ANALYSIS

As an initial matter, the undersigned reconsiders its order of September 27, 2019, which

treated Plaintiff's September 18, 2019 filing, entitled "Plaintiff's Partial Motion for Judgment on the Pleadings," as a motion for summary judgment. The undersigned granted Defendants' motion to defer consideration thereof pending a ruling on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF Dkt. #25). ECF Dkt. #35. However, upon further review of the pending earlier motions and Plaintiff's November 14, 2019 memorandum, the undersigned finds that Plaintiff's arguments overlap and are relevant to the disposition of the pending matters. Plaintiff's November 14, 2019 memorandum (ECF Dkt. #39) contains significantly more argumentation that overlaps with his September 18, 2019 filing (ECF Dkt.# 31) and, therefore, they may both be considered and disposed of together.

### A.      First Amendment

Plaintiff alleges First Amendment freedom of speech violations against all Defendants. *See* ECF Dkt. #16 at 21–23. The undersigned notes that Defendant raised the issue of whether Plaintiff waived his right to sue in federal court by filing in the Ohio Court of Claims. Even assuming Plaintiff did not validly waive this right, the undersigned recommends that Plaintiff's claim fails for other reasons. Specifically, the undersigned makes the following recommendations. First, the Court should find that Plaintiff's First Amendment claim under § 1983 against OSU is barred by Eleventh Amendment immunity and should be dismissed. The Court should find that this claim against the individually-named defendants is not barred by Eleventh Amendment immunity. Next, the Court should find that any First Amendment-related incident occurring on or after October 2, 2016 is not barred by the statute of limitations, whereas events preceding October 2, 2016 are barred. The Court should find further that Plaintiff's First Amendment claim does not have the requisite facial plausibility to survive a motion to dismiss. Finally, the Court should find that the individually-named defendants, in their official capacities, are entitled to qualified immunity for Plaintiff's First Amendment claims under § 1983.

### 1.      Waiver

A state statute may waive state immunity for a cause of action, including for federal statutory claims under § 1983. *Kajfasz v. Haviland*, 55 Fed.Appx. 719, 721 (6th Cir. 2003). In fact, Ohio has such a statute. The Ohio Court of Claims Act ("OCCA") waives the state's sovereign immunity and

declares that the state consents to be sued in the Court of Claims. *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987). Specifically, the OCCA provides the following:

> The state hereby waives its immunity from liability … and [consents to] have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter and, in the case of state universities or colleges, in section 3345.40 of the Revised Code …
>
> Except in the case of a civil action filed by the state, *filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee* … The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

O.R.C. § 2743.02(A)(1) (emphasis added).

Thus, if a plaintiff files suit in the Ohio Court of Claims, he waives the right to file a federal cause of action based upon those same acts. *See Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 952 (6th Cir. 1987). The Sixth Circuit pointed out that the statute specifically refers to an "act or omission" rather than an "allegation" or "claim." *Thomson v. Harmony*, 65 F.3d 1314, 1319 (6th Cir. 1995). Thus, the waiver applies even if the plaintiff attempts to bring different claims as long as the underlying conduct concerns the same specified act, transaction, or occurrence. It makes no difference if a plaintiff names different defendants in his federal and state suits, nor does the OCCA require the federal and state suits to be filed simultaneously. *Id.* at 1319 n.4. The OCCA does not deprive plaintiffs of a federal forum, but rather it "offers to make available an otherwise unavailable deep-pocket defendant, and an alternative forum, if prospective plaintiffs who think they have claims against individual state employees voluntarily elect to waive suit against the employees in favor of suit against the employer." *Id.* at 953. The Sixth Circuit has interpreted the OCCA "as establishing a *quid pro quo*, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees." *Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995); *see Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998). Therefore, Ohio gives prospective plaintiffs a choice either to prosecute a § 1983 action against the state's employees in state or federal court or to choose the

-7-

statutory option and sue the state itself in the Ohio Court of Claims, thereby waiving any claims against individual state employees. *Id.*

The Sixth Circuit has implicitly required waiver of a claim pursuant to § 2743.02(A)(1) to be knowing, intelligent, and voluntary. *Kajfasz v. Haviland*, 55 Fed.Appx. 719, 721 (6th Cir. 2003) (citing *Leaman*, 825 F.3d at 956). A plaintiff's waiver is presumed to be knowing, intelligent, and voluntary if he is represented by competent counsel when filing an action in the Court of Claims. *Id.* However, the presumption does not apply to a pro se plaintiff. In such a case, the district court must make a factual determination based upon the record that a pro se plaintiff knowingly, intelligently, and voluntarily waived his § 1983 claim in federal court when he filed suit in the Ohio Court of Claims. *Id.* at 722 (remanding to the district court to make a determination as to whether pro se plaintiff acted knowingly, intelligently, and voluntarily in waiving his § 1983 claim in federal court when he filed suit in the Ohio Court of Claims).

Moreover, both parties cite the following: "Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see* ECF Dkt. #25 at 7; #39 at 5. Section 9.86 refers only to civil actions under Ohio law, not federal law. *See Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869 (Ohio 1992)[1]; *see Thomson v. Harmony*, 65 F.3d 1314,

---

[1] In *Conley v. Shearer*, 1992-Ohio-133, 64 Ohio St. 3d 284, 292–93, 595 N.E.2d 862, 869 (Ohio 1992), the Supreme Court of Ohio stated:
A cause of action under Section 1983 must allege that a person, acting "under color of law," deprived the plaintiff of a constitutionally guaranteed federal right. [citation omitted]. The trial court dismissed Conley's Section 1983 claim on the same grounds as his other claims, *i.e.*, lack of subject matter jurisdiction pursuant to R.C. 2743.02 and R.C. 9.86. Those sections, however, do not apply to claims brought under federal law. R.C. 9.86 expressly limits its coverage to "any civil action that arises *under the law of this state * * *.*" (Emphasis added.)

Moreover, the United States Supreme Court has concluded that " ' "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law," ' " " 'even though the federal cause of action [was] being asserted in the state courts.' " *Howlett v. Rose* (1990), 496 U.S. 356, 376, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332, 353, quoting *Martinez v. California* (1980), 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488, and at fn. 8. The court in *Howlett* continued, " '[a] construction of [Section 1983 or 1985(3) ] which permit[s] a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.' " *Id.* Similarly, federal courts in Ohio have concluded that R.C. 9.86 and 2743.02(F) do not apply to Section 1983 claims even when such claims are pursued in state court. *Haynes v. Marshall* (C.A.6, 1989), 887 F.2d

1321–22 (6th Cir. 1995) (Merritt, C.J., dissenting). The *Haynes* court dealt with a § 1983 claim and a state law wrongful death claim asserted against corrections employees and whether the federal court may exercise pendent jurisdiction over the state law claim when the Ohio court of Claims did not determine whether or not the employee-defendants were immune from suit. It held that the district court could not assert pendent jurisdiction over the state law claim unless and until the Court of Claims determines the employee-defendants are not entitled to immunity. *Haynes*, 887 F.2d at 704–05.

Plaintiff filed a complaint in the Ohio Court of Claims against OSU, prior to filing the instant federal lawsuit, which commenced on December 26, 2018. ECF Dkt. #25 at 7; #39 at 5; *Khatri v. Ohio State Univ.*, Ct. of Cl. No. 2018-01233JD[2]. Plaintiff brought one claim against OSU for Whistle Blower Retaliation pursuant to O.R.C. § 4113.52. Plaintiff noted that he filed such complaint on the advice of his then-attorney who helped Plaintiff with the Equal Employment Opportunity Commission ("EEOC") process. ECF Dkt. #39 at 5. However, the Court of Claims dismissed his case for lack of subject matter jurisdiction. In particular, the court noted that the statutory language of Ohio's Whistle Blower Protection Act, R.C. § 4113.52, expressly confers jurisdiction over such claims upon the Courts of Common Pleas. *See Khatri v. Ohio State Univ.*, Ct. of Cl. No. 2018-01233JD (Entry of Dismissal dated November 20, 2018)[3].

Plaintiff now brings both federal and state law claims against OSU and the individually-named defendants in their official and personal capacities. ECF Dkt. #16. The face of the pleadings and other materials in the record are insufficient to confidently determine whether or not Plaintiff knowingly, intelligently, and voluntarily made a proper waiver by filing in the Ohio Court of Claims. Such a determination would likely require a hearing or further briefing. Despite having had

---

700; *Evans v. Celeste* (S.D.Ohio 1989), 718 F.Supp. 641; see, also, *Parks v. Wilkins* (S.D.Ohio 1988), 716 F.Supp. 1028.

[2] Online docket available at: https://ohcourtportal.tylerhost.net/Portal/Home/WorkspaceMode?p=0.

[3] Publicly available at: https://ohcourtportal.tylerhost.net/Portal/DocumentViewer/Index/FinXjWIdQ-eoDqGZ2qnhunxBN8ARzHQDfFOOi 5ryyapeISO5S-Ak16a_Cd_GET2GY75MaOfR3Y1Wmv2V4oAZf_F17mi_OSrjp4T6Fvfc3OcXsNq4_uUmC9pb7R MM-gZx0?p=0.

some minimal attorney assistance, his pro se status suggests that he did not validly waive his right to sue in federal court or his right to sue individual state employees. Notably, Plaintiff did not name any individual defendants in the Ohio Court of Claims suit; thus, that court had no opportunity to rule on whether the individually-named defendants would be immune from suit. As such, the individually-named defendants would be entitled to an immunity hearing under R.C. 9.86 and with regard to the state law claims against them before they may be sued. *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). Nevertheless, even assuming Plaintiff did not waive his § 1983 claim against any defendant, Plaintiff's claim fails for the following reasons.

### 2. Eleventh Amendment Immunity

The U.S. Supreme Court interpreted the Eleventh Amendment as prohibiting citizens from suing nonconsenting states in federal court. *See Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *see also Mumford v. Basinski*, 105 F.3d 264, 267 n.3 (6th Cir. 1997). Under the Eleventh Amendment, a state is an improper defendant for suit in federal court for claims under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). In addition to insulating the state itself, the Eleventh Amendment also prohibits federal court actions against state agencies and departments. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state may consent to a suit against it in federal court, but the consent must be "unequivocally expressed." *Id.* at 99. This jurisdictional bar applies regardless of the nature of the relief sought. *See id.* at 100-101.

Further, the Eleventh Amendment bars federal court claims against state employees in their official capacities because a suit against a state officer in his official capacity "...is tantamount to a suit against the state itself." *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). However, an important exception applies to this general prohibition, which is that "a suit challenging the constitutionality of a state official's action is not one against the State." *Halderman*, 465 U.S. at 102 (citing *Ex parte Young*, 209 U.S. 123 (1908)). In *Halderman*, the Supreme Court reasoned that the Eleventh Amendment did not bar a federal court from granting prospective injunctive relief against state officials on the basis of federal claims. *Id.* at 102-04 (relying on *Edelman v. Jordan*, 415 U.S. 651 (1974)). Additionally, plaintiffs may sue state officials in their individual capacities under § 1983

-10-

for monetary damages without violating the Eleventh Amendment. *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

The United States Supreme Court and the Sixth Circuit Court of Appeals have applied the Eleventh Amendment to claims of discrimination under 42 U.S.C. § 1983, indicating that while § 1983 provides a federal forum to remedy many deprivations of civil liberties, it does not provide a federal forum for claimants who seek a retrospective remedy against a State for alleged deprivations of civil liberties. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989); *Mumford v. Basinski*, 105 F.3d 264, 268 (6th Cir. 1997). Further, these Courts have held that "a state is not a person" within the meaning of § 1983 and is therefore not amenable to suit. *Id.*

Both parties concede certain arguments regarding Eleventh Amendment immunity. In his opposition memorandum, Plaintiff conceded that the Eleventh Amendment grants immunity to the State and state universities from lawsuits in federal court. ECF Dkt. #39 at 3; *see also Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 654 (S.D. Ohio 2016) ("A suit against OSU is the same as a suit against Ohio because OSU, like Ohio's other public universities, qualifies as an arm of the state.") (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)). Likewise, Defendants concede that Plaintiff can bring a claim against the individually-named defendants in this case under the *Ex Parte Young* doctrine for prospective injunctive relief only but that his First Amendment claims against such defendants fail for other reasons. ECF Dkt. #42 at 3-4. For these reasons, the undersigned recommends that the Court find that Plaintiff's First Amendment claim under § 1983 against OSU is barred by Eleventh Amendment immunity and should therefore be DISMISSED. However, the undersigned recommends that the Court find that the same claim against the individually-named defendants is not barred by Eleventh Amendment immunity.

### 3. Statute of Limitations

Cases arising under § 1983 do not contain a statute of limitations, so courts must apply state law to determine the relevant statute of limitations for each case. *Robertson v. Tenn*., 399 F.3d 792, 794 (6th Cir. 2005) (citation omitted); *see also Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (characterizing § 1983 claims as "tort actions for the recovery of damages for personal injury" such that "federal courts must borrow the statute of limitations governing personal injury actions

from the state where the § 1983 action was brought"). First Amendment claims under § 1983 brought in Ohio federal courts are subject to a two-year statute of limitations. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995); *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997); O.R.C. § 2305.10. First Amendment retaliation claims begin to accrue when the plaintiff knows or should have known of the injury or act that forms the basis of the claim. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *Sevier v. Turner*, 742 F.2d 262, 272–73 (6th Cir. 1984); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations that applies to a plaintiff's claim is tolled for the period during which his available state remedies were being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (citing 42 U.S.C. § 1997e(a)); *see Waters v. Evans*, 105 Fed.Appx. 827, 829 (6th Cir. 2004). In addition, the Sixth Circuit Court of Appeals recognizes the continuing violation doctrine, which allows courts to consider challenges to an ongoing, continuous series of discriminatory acts, but it rarely extends to § 1983 actions. *Pittman v. Spectrum Health Sys.*, 612 Fed.Appx. 810, 813 (6th Cir. 2015); *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). The U.S. Supreme Court limited the applicability of this doctrine in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070 (2002). In *Morgan*, the Supreme Court held that when an employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period. *Id.* at 2072. According to the Supreme Court, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 2073.

The parties agree that the first incident of alleged retaliation occurred immediately after Plaintiff reported misuse of dangerous infectious agents in October 2011. ECF Dkt. #25 at 8; #39 at 6. Plaintiff avers that he filed his complaint within the two-year limitations period, implying that the tolling began on the date of his employment termination in March 2018, despite the fact that the alleged wrongdoing occurred between October 2011 until the date of his termination. ECF Dkt. #39 at 6. Plaintiff specifically pointed out the most recent allegations of wrongdoing. First, he noted that

-12-

he filed a dispute form in August 2016 and was subsequently forced to undergo a fitness for duty examination. *Id.*; *see also* ECF Dkt. #31 at 10. He passed the fitness examination and was allowed to return to work in January 2017 but was required to meet with Department Acting Heads and the College Interim Associate Dean bi-weekly. ECF Dkt. #39 at 6; #31 at 10. He stated that he received negative comments in his annual review conducted in May 2017, and he alleged mismanagement of funds from his grant. Plaintiff also stated that he refused to include the Acting Department Head's name in his grant and was consequently placed on a Performance Improvement Plan ("PIP") sometime around October to December 2017. ECF Dkt. #39 at 6 (placed on PIP in October to November 2017); ECF Dkt. #31 at 13 (placed on PIP in December 2017).

Since Plaintiff filed the instant action in this Court on December 26, 2018, only his claims that are within the two-year statute of limitations period are not barred. Also, the period from August 28, 2018, when Plaintiff filed his complaint in the Court of Claims, until November 20, 2018, when such case was dismissed, is tolled[4]. Therefore, any First Amendment-related incident occurring on or after October 2, 2016 is not barred by the statute of limitations. Conversely, events preceding October 2, 2016 are barred.

### 4.     First Amendment Retaliation

To establish a prima facie First Amendment retaliation claim, a plaintiff must show the following: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the adverse action was motivated at least in part by the plaintiff's protected conduct." *Rapp v. Putman*, 644 Fed.Appx. 621, 624 (6th Cir. 2016) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)). If the plaintiff can establish a prima facie case, then the burden of proof then "shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Kline v.*

---

[4] The period between August 28, 2018 and November 20, 2018 is 85 days, or 2 months and 24 days, including November 20, 2018. *See* Fed. R. Civ. P. 6(a) ("Computing and Extending Time; Time for Motion Papers"). Two years (statue of limitations period) in addition to the 85 days tolling period prior to the original filing date of December 26, 2018 leads to October 2, 2016.

-13-

*Portage Cty. Bd. of Comm'rs*, 5 F. Supp. 3d 902, 912 (N.D. Ohio 2014) (quoting *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).

This case turns on the first element. When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he spoke as a citizen on a matter of public concern in order to establish that his speech was "protected conduct." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011); *Connick v. Myers*, 461 U.S. 138, 147 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147. Speaking as a citizen or on a matter of public concern does not automatically make the employee's speech privileged. Courts must balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968). The Sixth Circuit characterized the aforementioned standard into a three-part test: a public employee's speech is only protected when the speech (1) touches a matter of public concern; (2) is not uttered pursuant to the employee's official duties, but rather as a citizen; and (3) the employee's interest in the speech outweighs the government's interest in promoting the effective fulfillment of its responsibilities to the public. *Housey v. Macomb Cty.*, 534 Fed.Appx. 316, 321 (6th Cir. 2013) (internal citations omitted).

Plaintiff worked as a research scientist at OSU's Wooster Campus in the Ohio Agricultural Research and Development Center ("OARDC") and, specifically, for the department of Food Animal Health Research Program ("FAHRP"). During his tenure from September 2, 2008 until his termination on March 5, 2018, Plaintiff complained twice about the misuse of dangerous infectious agents at the FAHRP. ECF Dkt. #16 at 4; #8 at 3. He first complained on October 5, 2011 to Wooster campus police; Plaintiff also stated that he did not want to report to Dr. Mo Saif (Department Head) because he alleged that Drs. Saif and Lee both worked on the subject agents. ECF Dkt. #16 at 8; #8 at 11. Plaintiff raised another allegation of misuse of infectious agent at FAHRP to the Wooster Campus administration, Wooster campus human resources, and the Wooster

campus police in 2016. ECF Dkt. #8 at 3, 23–24; #16 at 16; #16-2 at 1. The specific date of the 2016 report(s) is not clear. A notorized EEOC charge of discrimination report filed by Plaintiff states that he reported the misuse of select agent to his superiors on November 18, 2016. ECF Dkt. #16-2 at 1. Plaintiff also included an email exchange as an exhibit from Plaintiff to a Public Safety Manager of the Wooster Campus dated October 25, 2019, in which Plaintiff complained of select agent misuse that occurred during May to June 2009 and in 2010. ECF Dkt. #16-19 at 1, 3. Finally, Plaintiff's complaint suggests that he made the report in or prior to August 2016. ECF Dkt. #16 at 16; *see* ECF Dkt. #25 at 8 (Defendant appears to treat the report as being dated in August 2016). It appears that the 2016 report was made to discuss allegedly ongoing select agent use that dated back to 2009. ECF Dkt. #16-3 at 9; #16-19 at 2-3. Plaintiff states that his motivation for making the reports was to prevent a major disaster that could result in the loss of human lives and the loss of livestock. ECF Dkt. #16 at 8.

Plaintiff alleges that the protected speech consisted of his reports of "illegal use of dangerous infectious agents." ECF Dkt. #39 at 7. Liberally construing the 2016 report to be within the statute of limitations period, the undersigned recommends that the Court find that mishandling of infectious agents touches a matter of public concern. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019) (quoting *Lane v. Franks*, 573 U.S. 228, 241, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014)). Dangerous infectious agents that could affect the health and safety of the community squarely fall into a matter of public concern.

Whether an employee's speech is protected by the First Amendment depends upon whether he undertook that speech as an employee or as a private citizen (the second prong of the *Housey* test). The federal government generally has a greater ability to limit the free speech rights of its employees than the public generally. *Housey v. Macomb Cty.*, 534 Fed.Appx. 316, 320 (6th Cir. 2013). The U.S. Supreme Court has held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes,

and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

A court must consider both the content and context of the speech, including to whom the statement was made, in determining whether the plaintiff made the statement pursuant to his official duties as an employee or made the statement as a private citizen. *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010); *Kline v. Portage Cty. Bd. of Comm'rs*, 5 F. Supp. 3d 902, 914 (N.D. Ohio 2014). The inquiry into the job duties of an employee is a "practical one" and the specific duty does not need to be included in the employee's job description. *Garcetti*, 547 U.S. at 242–25; *see Fox*, 605 F.3d at 348. Bringing complaints or raising concerns to one's superiors up the chain of command at the employee's workplace about job duties is speech undertaken in the course of performing the job. *Kline*, 5 F. Supp. 3d at 914 (citing *Fox*, 605 F.3d at 348).

Courts in this Circuit have weighed several factors in determining when an employee's speech is protected, including, but not limited to: (1) the nature of the employee's job, including express and implied duties; (2) to whom the employee made the complaint; and (3) the nature of the complaint in relation to the employee's job duties. *See, e.g.*, *Kline v. Portage Cty. Bd. of Comm'rs*, 5 F. Supp. 3d 902, 914–15 (N.D. Ohio 2014) (Plaintiff's complaints of financial discrepancies "owes its existence" to her job duties as an accounting supervisor and did not constitute protected First Amendment speech despite plaintiff's arguments that reporting accounting problems was not in her job description.); *Housey v. Macomb Cty.*, 534 Fed.Appx. 316, 322 (6th Cir. 2013) (concluding probate officer's reports and communications to state court administration office about alleged attorney and judicial misconduct was not protected speech because his official duties included ensuring that the court functioned properly); *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006) (finding that deputy district attorney did not speak as a private citizen when he wrote a memorandum to his supervisors expressing concern that a search warrant affidavit contained serious misrepresentations because it was written pursuant to his official duties); *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348–49 (6th Cir. 2010) (finding that plaintiff's complaints to her supervisors about the size of her teaching caseload were not protected speech because she spoke

as a public employee rather than a private citizen); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 543–45 (6th Cir. 2007) (finding that a park ranger's statements about morale and performance issues to an outside consultant hired by the ranger department to assess these matters were made pursuant to her official duties and were not protected speech, even though participating in the interview was an ad hoc duty not described in the ranger's official job description); *Haynes v. City of Circleville*, 474 F.3d 357, 364–65 (6th Cir. 2007) (finding that a police officer's memo to his superior officer expressing discontent about the financial cutbacks and changes to the canine-training program that he directed was not protected speech); *Lane v. Franks*, 573 U.S. 228, 238 (2014) (stating that truthful testimony about corruption of public officials under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes, even when the testimony relates to his public employment or concerns information learned during that employment); *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (holding that a city police officer's statements to the FBI alleging corruption within the city police department were constitutionally protected as a matter of public concern); *Marohnic v. Walker*, 800 F.2d 613 (6th Cir.1986) (finding associate director employee's speech was protected when he spoke to police officers regarding a criminal investigation of his public employer, a state mental-health board, because his "speech was induced by civic commitment" to cooperate with law enforcement, rather than by any official duty related to his employment).

In October 2011, Plaintiff reported the misuse of select infectious agents to Wooster campus police. ECF Dkt. #16 at 8; #8 at 11. In 2016, Plaintiff alleges that he attempted to contact the FBI but was unsuccessful. ECF Dkt. #39 at 8. He subsequently went to the Ohio Highway Patrol Office that was "very close" to his apartment, asking how he can approach the FBI to report illegal use of select agents at his workplace. *Id.* The Highway Patrol Agent referred Plaintiff to the Wooster campus police, and Plaintiff's official 2016 report appears to be with the Wooster campus police. *Id.*; ECF Dkt. #16-19. In 2016, Plaintiff also notified his superiors at the Wooster Administration and Human Resources. ECF Dkt. #16 at 16; #8 at 24; #16-2 at 1.

In light of the aforementioned factors, the undersigned recommends that the Court find that Plaintiff's speech was made as an employee and not as a private citizen. As such, Plaintiff's speech

-17-

is not afforded First Amendment protection. Plaintiff's job as a research scientist consisted of working with biological agents and following the laboratory's safety protocols and procedures. Some of Plaintiff's job duties as a research scientist included: creating and conducting experiments, communicating result to the scientific community via published papers, collaborating with other researchers, and obtaining external grants. ECF Dkt. # 16-3 at 5; *see also* ECF Dkt. #16-5 at 2 (official job and duty description). Plaintiff also admitted that he taught basic laboratory techniques to lab members. ECF Dkt. #16 at 8; #31 at 3. Plaintiff even stated that he "had to teach basic infectious disease concepts to Dr. Lee." ECF Dkt. #31 at 3.

In an EEOC position statement, OSU explained that select agents are heavily regulated by federal laws and agencies due to their potential harm. ECF Dkt. # 16-3 at 5. OSU also stated that at the time of Plaintiff's 2011 report, OSU was not registered to obtain select agents. *Id.* Even if there were no explicit guidelines as to how to report the misuse of select infectious agents, such a duty is necessarily implied. *See Kline v. Portage Cty. Bd. of Comm'rs*, 5 F. Supp. 3d 902, 915 (N.D. Ohio 2014) (Plaintiff accountant's "day-to-day responsibilities included ensuring sound accounting principles" and her failure to report would have been a dereliction of her duties.). In addition, Plaintiff's reports were made to his superiors and to campus police, and the nature of his complaints directly relate to his job duties as a research scientist. Since Plaintiff has not established that his speech was protected speech, he has not met his burden of establishing a prima facie case of a First Amendment retaliation claim against the individually-named defendants.

### 4. Qualified Immunity for Individually-Named Defendants

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity reflects a balancing of interests between protecting the rights of citizens and protecting officials who must exercise discretion and the "related public interest in encouraging the vigorous exercise of official authority." *Harlow*, 457 U.S. at 800. If a defendant raises the affirmative defense of qualified immunity, then the plaintiff "must plead

-18-

the violation of a clearly established constitutional right." *Roberts v. Ward*, 468 F.3d 963, 967 (6th Cir. 2006) (quoting *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir.2005)). The Sixth Circuit permits a reviewing court to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity. *Jackson*, 429 F.3d at 589. However, dismissal based on qualified immunity is only appropriate if "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Id.* Whether a state official is entitled to qualified immunity is determined by the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009) (internal citations omitted). Qualified immunity under § 1983 applies only to state employees in their official capacity and does not shield them from liability in their personal or individual capacity. *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)).

Plaintiff alleges that the individually-named defendants are not entitled to qualified immunity because they each violated Plaintiff's constitutional rights to free speech and retaliated against him. ECF Dkt. #39 at 9. Plaintiff avers that he faced retaliation because he raised public health and safety and national security concerns. *Id.* As discussed above, Plaintiff has not established that his First Amendment freedom of speech rights were violated. Thus, Plaintiff is unable to satisfy the requirement that he made out a violation of a constitutional right. Accordingly, the undersigned recommends that the Court find that the individually-named defendants, in their official capacities, are entitled to qualified immunity for Plaintiff's First Amendment claims under § 1983.

### B.    ADA and Rehabilitation Act

Plaintiff alleges disability discrimination under the ADA and Rehabilitation Act against all Defendants. *See* ECF Dkt. #16 at 27–28. For the foregoing reasons, the undersigned makes the following recommendations. First, the Court should find that Plaintiff's ADA claim against OSU is barred by Eleventh Amendment immunity and should be dismissed. Further, the Court should find that Plaintiff may not sue the individual defendants under the ADA in their personal capacities, and ADA claims against them in any capacity is barred because of the type of relief sought. To the extent Plaintiff seeks prospective injunctive relief against the individual defendants in their official

-19-

capacities, the Court should find that his ADA and Rehabilitation Act claims still fail.

### 1. Eleventh Amendment Immunity

Plaintiff admits that the Eleventh Amendment bars ADA claims against OSU, but he argues that OSU waived Eleventh Amendment immunity as to Rehabilitation Act claims because it accepted federal funds. ECF Dkt. #39 at 9–10. For the reasons discussed *supra*, the undersigned recommends that the Court find that Plaintiff's ADA claim against OSU is barred by Eleventh Amendment immunity and should therefore be DISMISSED. *See* discussion *supra* Section III.A.1. However, by accepting federal funds, OSU waived its Eleventh Amendment immunity as to Plaintiff's Rehabilitation Act claim. *See Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628 (6th Cir. 2001) (finding that States waive their Eleventh Amendment immunity with regard to Rehabilitation Act claims when they accept federal funds); *see also* ECF Dkt. #25 (Defendants only argue that the Eleventh Amendment immunity applies to the ADA claim).

As for the individually-named defendants, the state waiver for the Rehabilitation Act claim also waives any applicable Eleventh Amendment immunity. Specifically regarding the Title II ADA claims, Plaintiff seeks monetary damages and not prospective injunctive relief. ECF Dkt. #16 at 27–28. The Eleventh Amendment bars such claims against state officials as the *Ex Parte Young* exception does not apply when a plaintiff seeks monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–04 (1984) (citing *Ex parte Young*, 209 U.S. 123 (1908); *Edelman v. Jordan*, 415 U.S. 651 (1974)). Also, the Sixth Circuit has "repeatedly held that the ADA does not permit public employees or supervisors to be sued in their individual capacities." *Williams v. McLemore*, 247 Fed.Appx. 1, 8 (6th Cir. 2007) (citations omitted). Here, Plaintiff is suing the individually-named defendants in both their official and personal capacities. Accordingly, the undersigned recommends that the Court find that Plaintiff may not sue the individual defendants under the ADA in their personal capacities, and ADA claims against them in any capacity is barred because of the relief sought. Nevertheless, to the extent Plaintiff does seek prospective injunctive relief against the individual defendants in their official capacities, his ADA and Rehabilitation Act claims fail for the reasons discussed below.

-20-

## 2.    Failure to State a Claim for Relief

Both the ADA and the Rehabilitation Act of 1973 are similar in purpose and scope because they prohibit discrimination on the basis of actual or perceived disability. 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act); 29 U.S.C.A. § 705(20) (Rehabilitation Act defines "individual with a disability" as meaning an actual disability); 42 U.S.C.A. § 12112 (ADA, Title II); 42 U.S.C.A. § 12102(1) & (3) (ADA defines "disability" as an actual or perceived disability). However, under the Rehabilitation Act, a plaintiff must also allege that the defendant receives federal funds in order to state a claim. *See McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997). Plaintiff makes such an allegation here. ECF Dkt. #39 at 10–11.

To establish a prima facie case of intentional discrimination under the ADA or the Rehabilitation Act, Plaintiff must show that: (1) he had a disability; (2) he was otherwise qualified for the job; and (3) he was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of[5] his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996). "In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability." *Anderson*, 798 F.3d at 357. A plaintiff may introduce "direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision," or indirect evidence of discrimination. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). With direct evidence, the plaintiff need only prove the aforementioned 3 elements. But, to establish a claim for disability discrimination under the indirect method, a plaintiff must prove the aforementioned 3 elements in addition to the following: (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Ferrari*, 826 F.3d at 891–92.

Plaintiff alleges that Defendants continuously discriminated against him due to his son's

---

[5]The Rehabilitation Act requires adverse employment action based "solely" on the disability, whereas the ADA does not require a plaintiff to show that his disability was sole reason for his termination. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

chronic medical condition as well as Plaintiff's "perceived disability for reporting the misuse of dangerous infectious agents." ECF Dkt. #16 at 27; #39 at 10; #31 at 15. Alleging a family member's disability is insufficient to meet the definition of disability under either statute. *See* 29 U.S.C.A. § 705(20); 42 U.S.C.A. § 12102(1) & (3). Plaintiff's fitness for duty examination[6], ordered in December 2016, appears to be the most recent university action that could possibly provide a basis for disability discrimination. ECF Dkt. #16 at 27 ¶90. An "employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled." *Pena v. City of Flushing*, 651 Fed.Appx. 415, 420 (6th Cir. 2016) (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804 (6th Cir. 1999)). Ordering a fitness for duty examination "ordered for valid reasons can neither count as an adverse job action nor prove discrimination." *Id.* at 422 (citing *Sullivan*, 197 F.3d at 813). In fact, Plaintiff passed the fitness for duty examination and returned to work on January 18, 2017 from paid administrative leave. ECF Dkt. #16 at 17; #16-3 at 10–11. From the time he returned in January 2017 until his termination, Plaintiff and the OSU administration experienced continuing tension due to Plaintiff's complaints of being exploited and retaliated against as well as his superiors' negative reviews of Plaintiff's job performance. ECF Dkt. #16 at 17. Ultimately, OSU placed Plaintiff on a PIP around or in December 2017. ECF Dkt. #16 at 20; #16-3 at 12. Plaintiff alleges that he was terminated on March 5, 2018 for failing to complete his PIP. ECF Dkt. #16 at 20–21. He does not allege that his termination was related to the fitness for duty examination that occurred over 1 year prior to his termination. He also does not allege that he was terminated because of his son's disability or his own "perceived disability." Thus, Plaintiff failed to show elements one and three: he is not disabled and he has not shown nor alleged that he was excluded from participation in, denied the benefits of, or subjected to discrimination because of his perceived disability. The undersigned need not further analyze elements four and five under the indirect method. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016). Notwithstanding the partial Eleventh Amendment immunity discussed

---

[6] In OSU's EEOC response letter, OSU stated that it has a policy permitting it to require a fitness for duty examination when the employee's manager has concerns than an employee is physically or mentally unable to perform the essential functions of the position. ECF Dkt. #16-3 at 3–4, 10 n.5.

above, the undersigned recommends that the Court DISMISS Plaintiff's ADA and Rehabilitation Act claims against all Defendants.

### C.    Title VII Religion and National Origin Discrimination

Plaintiff alleges Title VII discrimination based on religion and national origin against all Defendants, except Dr. Rajashekara. *See* ECF Dkt. #16 at 27–28. For the foregoing reasons, the undersigned makes the following recommendations. The Court should find that Plaintiff's Title VII claims against defendants Elayne Siegfried and Dr. David Benfield should be dismissed for failure to state a claim against them. Further, the Court should find that Plaintiff's claims against OSU, Dr. Lee, and Dr. Saif would normally survive a motion to dismiss, but his claim against Dr. LeJeune would not survive a motion to dismiss. Nevertheless, the Court should ultimately find that Plaintiff's Title VII claims are untimely based upon his failure to exhaust his administrative remedies, and the Court should dismiss these claims against all Defendants, excluding Dr. Rajashekara.

### 1.    Untimeliness

A plaintiff must timely file a charge with the EEOC before filing a Title VII lawsuit. *See Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000). Pursuant to the statutory language of Title VII, the applicable statute of limitations begins to run from the date of "the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e–5(e)(1). If the alleged discrimination occurred more than 180 days before the plaintiff filed an EEOC charge, the plaintiff is barred from bringing these claims. *See id.* However, the state of Ohio is a "deferral state," and as such, Ohio has enacted its own laws regarding employment discrimination, one of which provides that the plaintiff must file with the EEOC within 300 days of the alleged discriminatory act. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (quoting *Alexander*, 177 F.3d at 407). Thus, a plaintiff in Ohio must bring a charge with the EEOC within 300 days of the alleged discriminatory act.

Plaintiff identifies as Hindu by religion and is from India. ECF Dkt. #39 at 15; #16-2 at 1. Plaintiff appears to allege three instances of Title VII discrimination. *See* ECF Dkt. #39 at 14-18. Plaintiff alleges that defendant Dr. Mo Saif (whose home country is Egypt) discriminated against

-23-

him when: a former student of Dr. Saif told Plaintiff on or around September 2008 that "Dr. Saif likes Muslims"; during an October 7, 2011 meeting, Dr. Saif refused to take action against Dr. Chang-Won Lee about whom Plaintiff had complained regarding work disputes; Drs. Saif and Lee hosted several visiting scholars/students from Egypt, Pakistan, and Lebanon[7] during 2010–2011 using Plaintiff's grant money; and Dr. Saif forced Plaintiff to write the thesis of his student, Abdul Rauf, around 2009 and felt obligated to loan Mr. Rauf money in 2011, which was later repaid in full. ECF Dkt. #16 at 5–6, 8–9, 11–12; #39 at 15; #31 at 3–4; #31-2 at 13 (date of thesis appears to be from or around November 26, 2009); #31-2 at 38–39 (check from Plaintiff to Abdul Rauf dated August 16, 2011 for $3,000 and check from Abdul Rauf to Plaintiff dated October 3, 2011 in the amount of $5,000). Dr. Saif retired in January 2013 and became a Professor Emeritus at the FAHRP. ECF Dkt. #16 at 10; #39 at 16.

Some time between September 2008 to January 2011, when Plaintiff left Dr. Lee's lab, Plaintiff alleges that Dr. Lee threatened him after Plaintiff insisted on following university rules in sending university property (a cell line) by a duly approved Material Transfer Agreement. ECF Dkt. #16 at 6. Specifically, Plaintiff alleges that Dr. Lee threatened him by saying that Plaintiff would need a job and medical insurance to save his son and that he would not let Plaintiff get a green card or an outside job. *Id.*; ECF Dkt. #31 at 3. Plaintiff stated that his department agreed to sponsor his green card application but later refused to do so when Plaintiff did not let Dr. Lee take his stem cell work and cell line. *Id.*

The next occurrence primarily concerns Dr. LeJeune. Plaintiff alleges that Dr. LeJeune forced Plaintiff to attend Bible Study in April 2013. ECF Dkt. #39 at 16. However, in his first amended complaint, Plaintiff merely alleges that Dr. LeJeune "asked" him to attend Bible Study and attached an email exhibit with a flyer invitation to attend Bible Study. ECF Dkt. #16 at 10; #16-11. Plaintiff stated that he felt pressured to attend a church-sponsored Gentlemen conference and sometimes Church due to the interpersonal relationships. ECF Dkt. #39 at 18. Although absent from

---

[7] Plaintiff stated after he complained about the misuse of infectious agents in 2011 and after Dr. Saif retired in 2013, "Drs. Saif and Lee no longer invited many students and visiting scholar[s] from Egypt." ECF Dkt. #16 at 16.

his first amended complaint, Plaintiff stated that Drs. Douglas Doohan and Warren Dick, neither of whom are defendants in this case, asked Plaintiff to take over as convener of the Bible study. ECF Dkt. #39 at 17. Plaintiff alleged that he declined because he was planning on moving to Columbus for a faculty position at OSU and that Drs. LeJeune, Doohan, and Dick all told him that they would not let Plaintiff move to Columbus. *Id.* On the one hand, Plaintiff appears to imply that Dr. LeJeune prevented Plaintiff from moving to Columbus because Plaintiff declined to take over as convener of the Bible Study. *Id.* On the other hand, Plaintiff implied that Dr. LeJeune blocked his move in order to keep him in his own department. ECF Dkt. #31 at 6. All of the instances concerning Bible Study stemmed from 2013 and ended around July 2014. ECF Dkt. #39 at 17–18.

Plaintiff only filed a charge with the EEOC on May 14, 2018. ECF Dkt. #16 at 4. However, all of the occurrences that remotely concern possible religious or national origin discrimination occurred as early as 2008 and as late as 2014, which fall well outside the scope of the statute of limitations. Plaintiff failed to file a complaint with the EEOC within 300 days of the alleged discriminatory acts and are consequently untimely. Having failed to exhaust his administrative remedies, the undersigned recommends that the Court find that Plaintiff's Title VII claims are untimely.

### 2. Failure to State a Claim for Relief

Plaintiff brings the instant Title VII against OSU and all the individually-named defendants, except for defendant Dr. Rajashekara. ECF Dkt. #16 at 28. However, the relevant instances noted in the first amended complaint, and even Plaintiff's brief, completely fail to mention defendants Elayne Siegfried and Dr. David Benfield[8]. Without any religious or national origin discrimination allegations against them, Plaintiff's Title VII claims against defendants Elayne Siegfried and Dr. David Benfield should be dismissed for failure to state a claim, notwithstanding the undersigned's prior recommendation that these claims are untimely.

---

[8] Plaintiff's brief only remotely mentions Dr. Benfield: "Plaintiff felt pressured to attend Conference and sometimes Church as Dr. Dick is friends with Dr. LeJeune and Dr. David Benfield." ECF Dkt. #39 at 18. However, Plaintiff does not allege Dr. Benfield actually did anything remotely discriminatory. Rather, the context shows that Plaintiff's real focus was on Dr. Dick's conduct, which is not relevant because he is not named as a defendant. *Id.*

In order to state a claim under Title VII for religious or national origin discrimination a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by establishing:

(1) that he was a member of a protected class,

(2) that he experienced an adverse employment action,

(3) that he was qualified for the position, and

(4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees.

*Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (religious discrimination); *Abdulnour v. Campbell Soup Supply Co.*, LLC, 502 F.3d 496, 501 (6th Cir. 2007) (national origin discrimination).

As an initial matter, Plaintiff's brief is silent as to his national origin discrimination charge. *See* ECF Dkt. #39 at 15–18. Rather, Plaintiff states that he is Hindu and that he faced discrimination due to his religion, without mentioning his country of origin (India) or making any argument related to his national origin. ECF Dkt. #39 at 15. However, in light of Plaintiff's pro se status and comments elsewhere in the record, the Court should find that Plaintiff is in a protected class as to his religion and national origin. *See also* ECF Dkt. #25 at 18 (Defendants acknowledge Plaintiff's traits and do not contest that these qualify as protected); *Chaudhuri v. State of Tenn.*, 886 F. Supp. 1374, 1381 (M.D. Tenn. 1995), *aff'd*, 130 F.3d 232 (6th Cir. 1997) (Defendants did not dispute that plaintiff who is Hindu and from India established a prima facie case of discrimination). Regarding element two, whether or not it was caused by Plaintiff's protected status, Plaintiff arguably experienced several adverse employment actions, including, but not limited to: his termination; his orders to attend an Employee Assistance Program; his orders to undergo the fitness for duty examination; and the orders to participate in a PIP. Defendants do not dispute element three: Plaintiff was qualified for his position as a Research Scientist.

Plaintiff states that he has direct evidence of religious discrimination. *Id.* "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tepper*, 505 F.3d at 516 (internal citation omitted). With direct evidence, the fact finder need not draw any inferences "to conclude that the challenged

-26-

employment action was motivated at least in part by prejudice against members of the protected group." *Id.* The facts already discussed do not show the necessary direct evidence to show religious discrimination, especially in light of the fact that they occurred between 2008–2014, well before Plaintiff was terminated from his employment in 2018.

The inquiry turns on the fourth element: Plaintiff has not shown that he was replaced by a person outside of the protected class, although he has made a prima facie showing that he was or may have been treated differently than similarly situated employees. Plaintiff's complaint is devoid of any allegation that he was replaced by anyone, let alone someone who is not in his protected class (Hindu, from India). He also does not explicitly allege that he was treated less favorably because he was Hindu. But, in his EEOC charge, Plaintiff stated that the "OARDC hired individuals of a different national origin and religion for the [faculty] positions and these individuals had significantly less or no research grants of their own, whereas [Plaintiff] brought in over one million dollars in grants." ECF Dkt.#16-2 at 2. He also claims to have been the only Research Scientist in his department who was paying his salary from his own grants. ECF Dkt. #16 at 5; #31 at 9.

In its EEOC position statement, OSU stated that Plaintiff began his employment at OSU as a postdoctoral scientist at the FAHRP Department. ECF Dkt.#16-3 at 4. It further explained:

> In 2010, the grant to fund Dr. Khatri's position as a postdoctoral scientist ended. However, Dr. Khatri remained employed at the University because he obtained external funding to support his research and salary. Dr. Khatri's efforts allowed him to obtain the new title of research scientist in the FAHRP Department. Dr. Khatri's continued employment as a research scientist depended on his ability to secure external funding to pay his own salary and to fund his research.

*Id.* at 5 (internal citations omitted). In addition, OSU claimed that, pursuant to the University Office of Research, Research Scientists are expected to secure their own external funding for their salary to support their research program. *Id.* at 5 n.2. Plaintiff disputes OSU's statements, claiming that he did not join as a post doc, but rather as a Research Scientist with principal investigator status. ECF Dkt. #16 at 5. He also claims that there was no two-year term and no precondition that he had to pay his salary from his grants. *Id.*

Plaintiff's claims against OSU, Dr. Lee, and Dr. Saif would normally survive a motion to dismiss. However, Plaintiff's claims regarding the salary and grant issue accrued in 2010 and are

-27-

now untimely. Plaintiff's claim against Dr. LeJeune, even if timely brought, would not survive a motion to dismiss. A mere invitation to attend bible study meetings is insufficient for a religious discrimination showing. Plaintiff does not provide a logical bridge to connect his religion to any alleged discriminatory act based upon that religion. Taking Plaintiff's statement that Dr. LeJeune prevented Plaintiff from moving to Columbus in October 2014 as true, the allegations and exhibit evidence do not actually show that the reason was motivated by religious discrimination. Rather, the evidence Plaintiff presented and allegations support a showing that Plaintiff was valued for bringing in grant money, which his department heads sought to retain.

### D. State Law Claims

Plaintiff brings several state law claims, including: Conspiracy to interfere with Civil Rights under 42 U.S.C. § 1983 against all Defendants and against the individually-named defendants in their official and personal capacities; Intimidation under O.R.C. § 2921.03(A) & (C) against all Defendants and against the individually-named defendants in their official and personal capacities; Civil liability for criminal acts under O.R.C. § 2307.60(A)(1) against all Defendants and against the individually-named defendants in their official and personal capacities; and Civil conspiracy under Ohio Common Law against all Defendants and against the individually-named defendants in their official and personal capacities. ECF Dkt. #16 at 23–27.

The Eleventh Amendment bars federal court jurisdiction over pendent state law claims against non-consenting states or state officials, regardless of the remedy sought by a plaintiff. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119–21 (1984); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). The State of Ohio has waived its sovereign immunity only as to actions brought in the Ohio Court of Claims. *See* discussion *supra* Section III.A.2.; *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987).

OSU is an arm of the State for purposes of the Eleventh Amendment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 654 (S.D. Ohio 2016) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)). The individually-named defendants, sued in their official capacities, are extended this same sovereign immunity protection. *Id.* (citing *Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989)). Moreover, the individually-named defendants are entitled to qualified immunity in their personal capacities under R.C. 9.86, unless otherwise determined by the Ohio Court of Claims. *Haynes v. Marshall*, 887 F.2d 700, 704–05 (6th Cir. 1989). The undersigned recommends that the Court find that it is without jurisdiction over Plaintiff's state law claims and should dismiss them against all Defendants.

In addition, this Court may refuse to exercise supplemental jurisdiction over the state law claims if it dismisses all of the federal causes of action. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)) ("When the balance of [certain] factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). In doing so, this Court should weigh the factors of judicial economy, convenience, fairness, and comity. *Id.*; *see Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). Although this case has been pending in this Court since December 26, 2018, the case still has not been fully pled, given the instant motion to dismiss. Therefore, upon dismissing the federal claims, the Court can properly dismiss the state law claims because the instant suit is in the early stages of the case and the state law claims would be more appropriately brought before a state court.

## IV.   CONCLUSION

For the aforementioned reasons, the undersigned recommends that the Court (1) DENY OSU's motion for judgment on the pleadings (ECF Dkt. #10) as MOOT, (2) GRANT Defendants' motion to dismiss Plaintiff's first amended complaint (ECF Dkt. #25), and (3) DENY Plaintiff's partial motion for judgment on the pleadings (ECF Dkt. #31). Specifically, the undersigned recommends that the Court DISMISS Plaintiff's federal claims WITH PREJUDICE. If the Court declines to exercise supplemental jurisdiction over the remaining state law claims, it may DISMISS them WITHOUT PREJUDICE. *See Combs v. Mgmt. & Training Corp.*, No. 3:16CV139, 2018 WL 3913111 (N.D. Ohio Aug. 15, 2018) (Upon dismissing federal claims with prejudice, the court declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed those claims without prejudice.). Alternatively, the Court may find that it is without jurisdiction over

-29-

such remaining state law claims via the Eleventh Amendment and dismiss such claims WITH PREJUDICE.


Date: January 17, 2020                                     /s/   *George J. Limbert*
                                                          GEORGE J. LIMBERT
                                                          U.S. MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).