# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MAHESH KHATRI, | ) | CASE NO.:    5:18CV02962 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| OHIO STATE UNIVERSITY, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** |
| | ) | |

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Plaintiff Mahesh Khatri's ("Khatri") employment with Defendant Ohio State University ("OSU") between September 2008 and March 2018. (Am. Compl. ¶¶ 2, 9-10, ECF No. 16.) Although Khatri has provided this Court with a lengthy and detailed recitation of his personal experiences while employed by OSU, along with various exhibits, the factual material relevant to Khatri's federal claims is as follows.

On September 2, 2008, Khatri began working for OSU at the Ohio Agricultural and Development Center in Wooster, Ohio as part of the Food Animal Health Research Program. (*Id.* at ¶ 9.) He initially worked in Defendant Chang-Won Lee's ("Lee") lab. (*Id.*) Khatri alleges that beginning in 2010, he observed the misuse of specific, federally regulated infectious agents in Lee's lab. (*Id.* at ¶¶ 16, 18-19.) In January 2011, Khatri moved from Lee's lab to Defendant Y.M. Saif's ("Saif") lab. (*Id.* at ¶ 16.) In October 2011, Khatri reported his personal observations of the alleged misuse of federally regulated infectious agents in Lee's lab to police in order "to prevent any major disaster that may have resulted in loss of human lives and livestock." (*Id.* at ¶¶ 18-21.)

Khatri admits that at the time of this report he personally opted not to provide evidence supporting his claims. (*Id.* at ¶ 21.)

Khatri alleges that after his report regarding the alleged misuse of federally regulated infectious agents, he "faced extensive retaliation." (*Id.* at ¶ 22.) Khatri claims that the retaliation included an order that he attend Employee Assistance Program sessions, an order that he turn over his personal work to Lee, the "blocking" of his employment applications to several schools, the inclusion of negative comments in his performance reviews, the creation of conditions that prevented him from completing work, and threats to terminate his employment. (*Id.* at ¶¶ 22-23.) Khatri further alleges that, despite multiple attempts to either obtain a faculty position within the Food Animal Health Research Program, obtain a faculty position elsewhere within OSU, or even obtain employment at a different school altogether, he was prohibited or prevented from doing so. (*Id.* at ¶¶ 25-30.) Khatri claims that during this time he was "repeatedly told 'you need a job and insurance to keep your son alive.'" (*Id.* at ¶¶ 27, 30.)

In January 2013, Khatri alleges that, due to Saif's retirement, he again "informed Wooster Administration and Wooster HR about the misuse of select infectious agent [sic] and asked their help to stop the retaliation" he was experiencing. (*Id.* at ¶¶ 24, 38-39.) Khatri claims he was not contacted regarding this report until August 2016. (*Id.* at ¶ 38.)

In late 2014 and early 2015, Khatri met with Defendants David Benfield ("Benfield") and Elayne M. Siegfried ("Siegfried") to discuss the retaliation he was experiencing as a result of his 2011 report of the alleged misuse of federally regulated infectious agents. (*Id.* at ¶¶ 31-32.) Khatri alleges that following this meeting, his annual review contained negative comments, his employment applications to other positions within and outside of OSU continued to be "blocked," and, additionally, Khatri claims his supervisor threatened to destroy Khatri's career and cause so

much stress for Khatri that his adrenal glands would cease to function, much like his son's. (*Id.* at ¶ 33.)

In June 2015, Khatri applied for two faculty positions within the Food Animal Health Research Program. (*Id.* at ¶ 34.) Khatri was not selected for either position. (*Id.*) Khatri claims that in addition to failing to hire him for either position within the Food Animal Health Research Program, OSU personnel also "blocked" his employment applications to other schools. (*Id.*) A year later, during the summer of 2016, Khatri submitted an employee dispute form explaining the retaliation he believed he was experiencing as a result of his 2011 report of the alleged misuse of federally regulated infectious agents. (*Id.* at ¶ 36.) Khatri claims that at this time he also finally provided witnesses and evidence of the alleged misuse of federally regulated infectious agents to the Biosafety Manager of OSU's Wooster campus, and as a result he was put on administrative leave and forced to undergo a fitness for duty examination. (*Id.* at ¶ 37.) Khatri returned to work in January 2017. (*Id.* at ¶ 40.)

In October 2016, Defendant Gireesh Rajashekara ("Rajashekara") became Khatri's supervisor. (*Id.*) Khatri alleges Rajashekara, like others before him, "blocked" Khatri's employment applications to other schools, prevented him from moving out of the Food Animal Health Research Program to a different department within OSU, and included negative comments in his performance reviews. (*Id.* at ¶¶ 40, 42-43.) Khatri alleges he filed a general complaint against Rajashekara in November 2017 and, as a result, was put on a Performance Improvement Plan ("PIP") in December 2017. (*Id.* at ¶¶ 47-48.) Khatri claims that in December 2017 and January 2018, he emailed high level OSU personnel to investigate the retaliation he believed he was experiencing. (*Id.* at ¶ 49.) Ultimately, Khatri was terminated in March 2018 and OSU cited his failure to complete the PIP as the reason for termination. (*Id.*)

Khatri additionally alleges that at times during his employment with OSU he received comments such as "Dr. Saif likes Muslims" and was invited to attend a bible study in early 2013 by his supervisor at the time, Dr. LeJeune. (*Id.* at ¶¶ 14, 25, 28.) Khatri also alleges that individuals associated with OSU repeatedly reminded him that he needed his job and associated medical insurance to provide care for his sick child. (*Id.* at ¶ 14.)

On May 14, 2018, Khatri filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination, religious discrimination, national original discrimination, and retaliation against OSU only. (*Id.* at ¶ 11. *See also* Am. Compl. Ex. 1, ECF No. 16-2.) The EEOC issued their dismissal of Khatri's claims and associated notice of rights letter on September 27, 2018. (Am. Compl. Ex. 1, ECF No. 16-2.) On December 26, 2018, Khatri filed his original complaint in this Court alleging OSU: (1) discriminated against him due to disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; (2) discriminated against him due to religion in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and (3) generally violated his First Amendment rights. (Compl. ¶ 3, ECF No. 1.) OSU timely filed its answer to Khatri's complaint on February 22, 2019. (Answer, ECF No. 8.)

On May 2, 2019, OSU filed a motion for partial judgment on the pleadings. (OSU's Mot. J. on Pleadings, ECF No. 10.) In response, Khatri requested an extension until the conclusion of discovery to oppose the motion for partial judgment on the pleadings – a request which was opposed by OSU. (First Mot. for Extension, ECF No. 14; Opp'n to First Mot. for Extension, ECF No. 15.) On May 22, 2019, this Court held a Case Management Conference to set specific deadlines for this matter. (*See* Docket Entry 5/22/2019; Case Management Conference Plan, ECF No. 13.) Pursuant to the Case Management Conference Plan, the deadline for amending pleadings was June 24, 2019. (Case Management Conference Plan 4, ECF No. 13.)

On June 24, 2019, Khatri filed an amended complaint against OSU which added individual defendants Benfield, Saif, Lee, Rajashekara, and Siegfried (OSU and the individual defendants are collectively "Defendants" throughout). (Am. Compl. ¶¶ 1-7, ECF No. 16.) Khatri's amended complaint alleged OSU and each individual defendant: (1) retaliated against him for exercising his First Amendment right to freedom of speech, in violation of 42 U.S.C. § 1983; (2) engaged in a conspiracy to interfere with his First Amendment civil right to freedom of speech, in violation of 42 U.S.C. § 1983; (3) discriminated against him due to his son's disability and due to perception that Khatri himself was disabled in violation of the ADA and Rehabilitation Act; and (4) discriminated against him due to religion and national original in violation of Title VII. (*Id.* at ¶¶ 51-70, 88-95.) Khatri specified that the claims for discrimination against him due to religion and national origin in violation of Title VII were not asserted against Rajashekara. (*Id.* at ¶¶ 93-95.) Khatri also asserted various state law claims under Ohio law. (*Id.* at ¶¶ 71-87.) On July 29, 2019, Defendants filed a motion to dismiss Khatri's amended complaint. (Mot. to Dismiss, ECF No. 25.) In response, Khatri requested an extension until the conclusion of discovery to oppose the motion to dismiss – a request which was opposed by Defendants. (Second Mot. for Extension, ECF No. 26; Opp'n to Second Mot. for Extension, ECF No. 30.)

On September 18, 2019, Khatri filed a motion for partial judgment on the pleadings in which he requested this Court enter partial summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56 on his claims brought under the Rehabilitation Act. (Pl.'s Mot. J. on Pleadings 1-2, ECF No. 31.) In response, Defendants moved this Court to defer ruling on Khatri's motion for partial judgment on the pleadings until after ruling on their motion to dismiss Khatri's amended complaint. (Mot., ECF No. 32.)

On September 25, 2019, the matter was referred to the Magistrate Judge for pretrial supervision and a Report and Recommendation ("R. & R.") on pending dispositive motions. (Order, ECF No. 33.) Through orders, the Magistrate Judge denied Khatri's request for an extension until the conclusion of discovery to oppose OSU's motion for partial judgment on the pleadings, denied Khatri's request for an extension until the conclusion of discovery to oppose Defendants' motion to dismiss Khatri's amended complaint, and granted Defendants' motion to defer ruling on Khatri's motion for partial judgment on the pleadings until after ruling on Defendants' motion to dismiss Khatri's amended complaint. (Order, ECF No. 35; Order, ECF No. 38.) Accordingly, Khatri timely filed his opposition to OSU's motion for partial judgment on the pleadings and Defendants' motion to dismiss his amended complaint on November 14, 2019. (Opp'n to Pending Mot., ECF No. 39.) Defendants timely filed a reply in support of their motion to dismiss Khatri's amended complaint. (Reply in Supp. Mot. to Dismiss, ECF No. 42.)

On January 17, 2020 the Magistrate Judge issued the R. & R. recommending this Court deny OSU's motion for partial judgment on the pleadings as moot, grant Defendants' motion to dismiss Khatri's amended complaint, and deny Khatri's motion for partial judgment on the pleadings. (R. & R. 1, ECF No. 49.) The R. & R. contained the instruction that any objections to the R. & R. must be filed "within fourteen (14) days of service" of the R. & R., and the failure to object within the specified fourteen days waived the right to appeal the recommendation. (*Id.* at 30.)

On February 3, 2020, having failed to receive objections to the R. & R. by any party, this Court adopted the R. & R. in full and denied OSU's motion for partial judgment on the pleadings as moot, granted Defendants' motion to dismiss Khatri's amended complaint, and denied Khatri's motion for partial judgment on the pleadings. (Order and Op., ECF No. 50.) Accordingly, all Khatri's federal claims were dismissed with prejudice, and this Court declined to exercise

supplemental jurisdiction over Khatri's state law claims, dismissing them without prejudice. (*Id.*) Because all claims against all parties were dismissed, this case was closed February 3, 2020. (*Id. See also* J., ECF No. 51.)

On February 4, 2020, Khatri filed objections to the R. & R., asserting upfront that his objections were due on or before February 8, 2020 – calculated as fourteen days from the date he personally received a copy of the R. & R. in the mail. (Objections to R. & R., ECF No. 52.) On March 2, 2020, Defendants filed a response to Khatri's objections. (Resp. to Objections, ECF No. 57.) Thereafter, Khatri submitted motions requesting this Court urgently consider his untimely objections, and submit an expedited ruling denying Defendants' motion to dismiss his amended complaint, granting his motion for partial judgment on the pleadings, allowing for the submission of further dispositive motions, and allowing for the case to proceed to a jury trial. (Mot. for Ruling, ECF No. 58; Second Mot. for Ruling, ECF No. 60; Third Mot. for Ruling, ECF No. 67.)

At the outset, despite Khatri's argument to the contrary, Khatri's objections to the R. & R. were untimely. The Magistrate Judge issued the R. & R. on January 17, 2020. (R. & R., ECF No. 49.) Therefore, Khatri had until January 31, 2020 – fourteen days after the issuance of the R. & R. – to submit his objections in accordance with Federal Rule of Civil Procedure 72(b)(2). Because the R. & R. was mailed to Khatri, three additional days were added to the deadline pursuant to Federal Rule of Civil Procedure 6(d). The final day for Khatri to submit timely objections to the R. & R. was February 3, 2020. Khatri did not submit his objections until February 4, 2020.

As a final note on this issue, Khatri calculated the date on which his objections were due from the date on which he personally received the R. & R. in the mail. However, the use of the word "service" in the federal rule and associated instruction contained in the R. & R. is akin to the word "issuance," not the word "receipt" as Khatri's argument suggests. If the date of receipt were used

to begin the fourteen-day clock, rather than the date of issuance, certainly different parties would have different due dates creating unnecessary confusion and potentially slippery arguments regarding the actual date of receipt. Despite the untimeliness of Khatri's objections, this Court will address their merits in order to bring finality to this matter.

## II.  STANDARD OF REVIEW

Any objections to a Magistrate Judge's report and recommendation "shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." N.D. Ohio LCrR 72.3(b). *See also* Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b). This Court then reviews, de novo, "those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." N.D. Ohio LCrR 72.3(b). *See also* Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b). This Court need only review de novo those portions of the Magistrate Judge's report and recommendation that are specifically objected to. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). This Court need not engage in a de novo review "where the objections are 'frivolous, conclusive, or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)).

First, as a preliminary matter, no party has objected to the recommendation that this Court deny OSU's motion for partial judgment on the pleadings as moot. When Khatri filed a complete amended complaint void of reference to or adoption of his original complaint, his amended complaint superseded his original complaint rendering it null. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) ("amended pleadings supersede original pleadings"); *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014) (explaining that when an

amended pleading "is complete in itself and does not refer to or adopt a former pleading" it supersedes the former pleading). Because Khatri's amended complaint superseded his original complaint, effectively rendering the original complaint moot, OSU's motion for partial judgment on the pleadings was also rendered moot. Therefore, OSU's motion for partial judgment on the pleadings remains DENIED as MOOT.

## III. DISCUSSION

Because Defendants' motion to dismiss Khatri's amended complaint was the primary dispositive motion before the Magistrate Judge, Khatri's submitted objections to the R. & R. must be viewed through the appropriate lens – that of whether Khatri's amended complaint meets the appropriate legal standards for pleadings.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for the dismissal of claims when the claimant has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

First, and foremost, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation does not demand "detailed factual allegations," but it does necessitate "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Pleadings offering either "labels and conclusions or a formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or even "naked assertion[s] devoid of further

factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

When well-pleaded factual allegations are provided, this Court then, "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible when the factual content pled "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Notably, plausibility and probability are not one in the same. Rather, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Under this standard, this Court must construe the pleading subject to dismissal in the light most favorable to the non-moving party and accept all factual allegations contained in the pleading as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. 555-56). In addition, where the pleading under scrutiny is from those acting in their pro se capacity, as it is in this instance, this Court is aware of the need to hold the pleading "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 520 (1972). Even so, "pro se plaintiffs are not automatically entitled to take every case to trial" and "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

Individuals proceeding pro se are still required to meet basic pleading requirements. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, the pleading "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal

quotation marks omitted) (*emphasis* in original). However, even this "less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Kamppi v. Ghee*, No. 99-3459, 2000 U.S. App. LEXIS 4160 at *4 (6th Cir. Mar. 14, 2000) (citing *Scheid*, 859 F.2d at 437).

### A. The First Amendment Claims

In his amended complaint, Khatri alleges that OSU and each individual defendant retaliated against him for exercising his First Amendment right to freedom of speech, in violation of 42 U.S.C. § 1983. With respect to this claim, the Magistrate Judge recommended: (1) proceeding on the assumption Khatri did not waive his right to assert the claim in this Court by previously filing in the Ohio Court of Claims; (2) dismissal of the claim against OSU as it is barred by Eleventh Amendment sovereign immunity principles; and (3) concluding any incident forming the basis of Khatri's claim which occurred prior to October 2, 2016 is barred by the applicable statute of limitations. (R. & R. 6-13, ECF No. 49.) With what remained of the claim after these conclusions, the Magistrate Judge recommended: (1) finding Khatri's speech was not protected by the First Amendment; and (2) dismissal of the claim as to the individual defendants, given they enjoy qualified immunity. (*Id.* at 13-19.) Khatri objects to the recommendations that any incident which occurred prior to October 2, 2016 is barred by the applicable statute of limitations, that his speech was not protected by the First Amendment, and that the individual defendants enjoy qualified immunity. (Objections to R. & R. 2-14, ECF No. 52.)

### 1. *Statute of Limitations*

Claims brought pursuant to 42 U.S.C. § 1983 apply the statute of limitations of the applicable state's general personal injury statute, which is a two-year statute of limitations period in Ohio pursuant to O.R.C. § 2305.10. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir.

2003) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1998)); *Brown v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1984). For these claims, the statute of limitations clock "starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Kuhnle Bros. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). This means the statute of limitations clock begins when an event that "should have alerted the typical lay person to protect his or her rights" occurs. *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).

Of course, exceptions apply to this general rule. One such exception is the continuing-violation doctrine which "operates to toll a limitations period when an employer's conduct 'represent[s] an ongoing unlawful employment practice.'" *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002)). *See also Bowerman v. Int'l Union*, 646 F.3d 360, 366 (6th Cir. 2011) (explaining that typically the continuing-violation doctrine applies in Title VII cases, but the Sixth Circuit Court of Appeals "has considered applying it to claims under § 1983"). This Court will operate under the presumption that the continuing-violation doctrine is applicable in this matter.

For his first objection, Khatri asserts that the Magistrate Judge erred by not tolling the statute of limitations period since all occurrences at issue were part of a continuing violation, custom or policy, and constituted a hostile work environment. Of note, Khatri raises this argument for the first time in his objections to the Magistrate Judge's R. & R. – this argument was not asserted in Khatri's opposition to Defendants' motion to dismiss his amended complaint. (Opp'n to Pending Mot. 5-6, ECF No. 39.) Typically, this Court would deem an argument not previously asserted as waived. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 518-19 (6th Cir. 2010) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived") (citations

and internal quotation marks omitted). However, in the quest to achieve finality of this matter, this Court will briefly address Khatri's arguments.

There are two categories of continuing violations that would allow Khatri to establish an exception to the two-year statute of limitations period for his First Amendment claims brought pursuant to 42 U.S.C. § 1983. *Bowerman*, 646 F.3d at 366 (6th Cir. 2011). "The first is 'where [Khatri] can show prior [wrongful] activity that continues into the present,' and the second is 'where [Khatri] can show a longstanding and demonstrable policy'" of retaliation. *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)).

With respect to the first category, Khatri cannot establish a continuing violation simply by demonstrating that any alleged wrongful acts which occurred prior to the two-year statute of limitations period "are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003). Going further, discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete . . . act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire" which are "easy to identify" and, if discriminatory or retaliatory in nature, each "constitute[] a separate actionable 'unlawful employment practice'" as opposed to a continuing violation. *Id.* at 114.

Because, in sum and substance, Khatri alleges the retaliation he experienced was in the form of including negative comments on his performance reviews, "blocking" his employment applications to outside schools, preventing his transfer to a different department within OSU, failing to hire him for a different position with the Food Animal Health Research Program, placing him on a performance improvement plan, and terminating him, these all constitute separate and discrete instances of alleged retaliation, of which Khatri was aware precisely when they occurred.

Because of their individuality, despite any perceived relation between them, Khatri cannot establish a continuing violation under this first category which would toll the two-year statute of limitations.

With respect to the second category, Khatri must "demonstrate something more than the existence" of retaliatory treatment in his own case. *Sharpe*, 319 F.3d at 268 (quoting *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992)) (internal quotation marks omitted). He must demonstrate "a long-standing and demonstrable policy" existed, "not merely the occurrence of an isolated incident" in order to toll the two-year statute of limitations. *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 838 (6th Cir. 1988) (citing *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987)). In fact, discrimination or retaliation against one individual "is inadequate to invoke the 'longstanding and demonstrable policy'" exception of the continuing-violation doctrine. *Sharpe*, 319 F.3d at 269.

Despite Khatri's assertions and arguments to the contrary, the alleged retaliation he experienced as a result of reporting the alleged misuse of federally regulated infectious agents was not pursuant to a custom or policy – his allegations are personal in nature and his amended complaint is devoid of any allegation, or even suggestion, that other individuals who previously, or even contemporaneously, exercised their freedom of speech were similarly retaliated against. Therefore, Khatri cannot establish a continuing violation under this second category which would toll the two-year statute of limitations.

As a final note, Khatri also asserts that the statute of limitations should be tolled because he experienced a hostile work environment beginning from the date of his 2011 report regarding the alleged misuse of federally regulated infectious agents continuing through the present. However, Khatri's amended complaint does not allege a legal claim of hostile work environment under any

theory of liability against any defendant, and it would certainly be inappropriate to allow an entirely new, not previously pled claim to be raised and argued for the first time in objections to the Magistrate Judge's report and recommendation. *See Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (explaining "there is no 'duty [on the part] of the trial court or the appellate court to create a claim which [Khatri] has not spelled out in his pleading'") (quoting *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)). This claim, therefore, is not properly before this Court and will not be addressed further.

Accordingly, Khatri cannot demonstrate that the two-year statute of limitations period established by law should be tolled. Because neither party objected to the Magistrate Judge's conclusions that Khatri's amended complaint should relate back to the filing date of his original complaint and that the statute of limitations should be tolled for the eighty-five days Khatri's Ohio-law whistleblower claims pended against OSU in the Ohio Court of Claims, this Court hereby adopts the Magistrate Judge's reasoning and conclusion that any incident forming the basis of Khatri's First Amendment retaliation claim which occurred prior to October 2, 2016 is time-barred by the applicable statute of limitations. (R. & R. 4, 11-13, ECF No. 49.) In conclusion, because Khatri cannot demonstrate any exception to the two-year statute of limitations period for his First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983, his objection to the Magistrate Judge's R. & R. is OVERRULED.

2. *Protected Speech*

When bringing a First Amendment retaliation claim against his employer, an employee must first demonstrate that the speech for which he was retaliated against was constitutionally protected. *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (enumerating the elements of a

First Amendment retaliation claim)). When the employee claiming First Amendment retaliation is a public employee suing his government employer, the public employee must demonstrate that he spoke as a private citizen on a matter of public concern for the speech to be constitutionally protected. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 386 (2011) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). The Magistrate Judge concluded, after thorough legal analysis, that although Khatri's speech involved a matter of public concern, Khatri did not speak as a private citizen, but rather pursuant to his duties as an employee in the course of performing his job, rendering his speech outside the limits of First Amendment protection. (R. & R. 13-18, ECF No. 49).

Because the question of whether Khatri's speech was of a matter of public concern is not at issue since neither party objected to the Magistrate Judge's conclusion to this effect, this Court will only address whether Khatri spoke as a public employee or private citizen. A "public employee's speech is only protected when . . . it is not uttered pursuant to the employee's 'official duties' but rather 'as a citizen.'" *Housey v. Macomb Cnty.*, 534 F. App'x 316, 321 (6th Cir. 2013) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). When a public employee's speech "owes its existence to [the] employee's professional responsibilities," it is considered speech uttered by a public employee pursuant to that employee's official duties – especially when the speech is not uttered to the public or an agency unaffiliated with the speaker's employer. *Garcetti*, 547 U.S. at 421; *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348-50 (6th Cir. 2010).

Despite repeating the factual allegations contained in his amended complaint, in his objection to this portion of the R. & R., Khatri does not adequately refute the Magistrate Judge's conclusion that Khatri spoke as a public employee rather than a private citizen. In fact, Khatri reaffirms that although he inquired about making a report to outside agencies, his reports regarding the alleged

misuse of federally regulated infectious agents were actually made to entities associated with his employer – namely campus police, administration, and human resources. (Objections to R. & R. 5-11, ECF No. 52.) Khatri also reaffirms that the nature of his speech – the alleged misuse of federally regulated infectious agents – related directly to his duties as a research scientist given he worked with biological material, followed safety protocols, engaged in scientific experiments, and taught laboratory techniques to colleagues. (*Id.*) These affirmations are fatal to his attempts to classify his speech as that uttered by a private citizen earning protection under the First Amendment.

Any of Khatri's reports of the alleged misuse of federally regulated infectious agents properly before this Court, are not instances of speech protected by the First Amendment. Accordingly, because Khatri failed to plausibly plead that his speech was uttered as a private citizen, unrelated to his job duties and to entities outside the chain of command of his employer, this objection to the R. & R., is OVERRULED.

3. *Qualified Immunity*

Before this Court can impose individual liability pursuant to 42 U.S.C. § 1983 upon the individually named defendants in this matter, Khatri must have alleged facts that "make out a violation of a constitutional right," because otherwise, the named state officials enjoy qualified immunity against individual liability. *See Lipman v. Budish*, 974 F.3d 726, 749 (6th Cir. 2020); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Although qualified immunity is an affirmative defense, the issue may be resolved through Federal Rule of Civil Procedure 12(b)(6) motion practice when "the *complaint* establishes the defense." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761-62 (6th Cir. 2020) (*emphasis* in original). In such an instance, the threshold question is "whether the complaint plausibly alleges 'that an official's acts violate the plaintiff's clearly

established constitutional right.'" *Id.* at 762 (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

As fully discussed above, Khatri's speech was outside the scope of First Amendment protections. Therefore, Khatri's amended complaint cannot plausibly allege, as required under federal pleading standards, that any of the individually named defendants violated his clearly established constitutional rights. Khatri's objection to awarding the individual defendants qualified immunity once again recites the factual material contained in his amended complaint but fails to adequately refute the legal conclusion that his speech was not protected by the First Amendment. Accordingly, Khatri's objection to the Magistrate Judge's conclusion to this effect is OVERRULED.

4. *Individually Named Defendants*

As a brief note, this Court recognizes that Khatri asserted his First Amendment retaliation claim against all individually named defendants in their "official and personal capacities" and requested monetary, declaratory, and injunctive relief. (Am. Compl. 21-29, ECF No. 16.) This Court also recognizes that qualified immunity "protects officials from monetary damages in their individual capacities only." *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) (citing *Garcia v. Dykstra*, 260 F. App'x 887, 895 (6th Cir. 2008)). However, because Khatri "has not established that his speech was protected speech, he has not met his burden of establishing a prima facie case of a First Amendment retaliation claim against the individually-named defendants." (R. & R. 18, ECF No. 49.) Accordingly, even while assuming all factual allegations contained in Khatri's amended complaint as true, resolving all inferences in his favor, and construing the amended complaint in the light most favorable to him, Khatri has not plausibly stated a claim for relief of First Amendment retaliation pursuant to 42 U.S.C. § 1983 against the

individual defendants, in either their official or personal capacities for any type of relief sought. Accordingly, Khatri has not met the federal pleading standards required to defeat Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss the entirety of the First Amendment retaliation claims against all individual defendants.

In conclusion, proceeding under the assumption that Khatri did not waive his right to assert claims in this Court against OSU or the individually named defendants when he filed a claim against OSU in the Ohio Court of Claims, any claim brought by Khatri against OSU for First Amendment retaliation pursuant to 42 U.S.C. § 1983 is dismissed as it is barred by Eleventh Amendment sovereign immunity. With respect to the individually named defendants, any incident forming the basis of Khatri's First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983 which occurred prior to October 2, 2016 is barred by the applicable statute of limitations. Furthermore, Khatri has failed to plausibly plead that his speech was protected by the First Amendment. Therefore, while the individually named defendants enjoy qualified immunity from monetary damages in their individual capacities, all First Amendment retaliation claims brought against each individual defendant in either their official or personal capacity for any type of relief sought pursuant to 42 U.S.C. § 1983 is dismissed because Khatri has not plausibly pled a claim for relief as required to defeat a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Given these conclusions, Khatri's objections to the Magistrate Judge's Report and Recommendation regarding his First Amendment claims are OVERRULED and Defendants' motion to dismiss Khatri's claims that OSU and the individually named defendants retaliated against him for exercising his First Amendment right to freedom of speech, in violation of 42 U.S.C. § 1983, is GRANTED.

**B.  The ADA and Rehabilitation Act Claims**

In his amended complaint, Khatri alleges that OSU and each individual defendant discriminated against him in violation of the ADA and Rehabilitation Act. With respect to this claim, the Magistrate Judge recommended: (1) dismissal of the claim brought pursuant to the ADA against OSU as it is barred by Eleventh Amendment sovereign immunity principles; (2) dismissal of the claim brought pursuant to the ADA against the individual defendants in their personal capacities given "the ADA does not permit public employees or supervisors to be sued in their individual capacities" *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007); and (3) dismissal of anything remaining of the claim as Khatri has failed to state a plausible claim for relief. (R. & R. 19-23, ECF No. 49.) Liberally reading Khatri's objections, it appears he disagrees with the Magistrate Judge's overarching conclusion that he failed to state a plausible claim for relief against any defendant under either the ADA or Rehabilitation Act and argues that he adequately pled he was discriminated against because of his own perceived disability and the disability of his son in defeat of Defendants' motion to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Objections to R. & R. 14-23, ECF No. 52.)

Both the ADA, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, "prohibit discrimination against the disabled." *McPherson v. Mich. High Sch. Ath. Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997). Because the ADA and the Rehabilitation Act are "quite similar in purpose and scope," analysis of claims under the ADA "'roughly parallels those brought under the Rehabilitation Act . . . .'" *Id.* at 459-60 (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996)). In addition, "'by statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination.'" *McPherson*, 119 F.3d at 460 (quoting *Burns v. City of Columbus*, 91 F.3d 836, 842 (6th Cir. 1996)). In sum, "analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to .

. . the Rehabilitation Act." *Jakubowski v. Christ Hosp. Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citing *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (explaining that analysis of ADA claims and Rehabilitation Act claims can occur concurrently "because the purpose, scope, and governing standards of the 'acts are largely the same, cases construing one statute are instructive in construing the other'") (quoting *McPherson*, 119 F.3d at 460)).

Therefore, to establish a prima facie case of employment discrimination under either the ADA or the Rehabilitation Act, Khatri must allege: (1) that he is either disabled or perceived to be disabled within the definitions of the statutes; (2) that he was qualified to perform his job with or without a reasonable accommodation; (3) that he suffered an adverse employment action on the basis of his disability or perceived disability; (4) that his employer knew or had reason to know of his disability; and (5) that he was replaced or the position remained open while his employer searched for alternate applicants.[1] *See Whitfield v. Tenn.*, 639 F.3d 253, 258-59 (6th Cir. 2011); *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997); *Monette*, 90 F.3d at 1178. Under the Rehabilitation Act, Khatri "must further allege that the [defendant] receives federal funds." *Andrews*, 104 F.3d at 807. In the simplest terms, Khatri must show that he suffered an adverse employment action because of his perceived disability or because of his son's disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

To be clear, "[a]n adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct'" where the materially adverse

---

[1] While the Rehabilitation Act prohibits adverse employment actions which occur "solely by reason of" an individual's disability, the ADA prohibits adverse employment actions simply "on the basis of disability." *See* 29 U.S.C. § 794; 42 U.S.C. § 12112(a). *See also Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314-317 (6th Cir. 2012). This Court will utilize the lower "on the basis of disability" standard from the ADA throughout, because if Khatri has not plausibly pled that any adverse employment action was suffered on the basis of disability, he certainly has not plausibly pled that any adverse employment action was suffered solely by reason of disability. In other words, in this instance, this Court will utilize the lower ADA standard because it is dispositive of both Khatri's ADA claim and Rehabilitation Act claim.

change "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996)). Going further, "de minimis employment actions are not materially adverse and, thus, not actionable" because, in truth "a 'bruised ego' is simply not enough to constitute an adverse employment action." *Mitchell*, 389 F.3d at 182 (quoting, in turn, *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000); *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)).

      1.  *Perceived Disability*

Khatri's amended complaint alleges that during the summer of 2016 he submitted an employee dispute form discussing the retaliation he believed he was experiencing as a result of his 2011 report of the alleged misuse of federally regulated infections agents. Khatri claims that the time he submitted this employee dispute form he finally provided witnesses and evidence of the alleged misuse of federally regulated infectious agents to the Biosafety Manager of OSU's Wooster campus, which resulted in Khatri's placement on administrative leave pending a fitness for duty examination. Khatri specifically alleges that OSU and Defendants retaliated against him "for raising misuse of dangerous infectious agents . . . and perceived him disabled and subjected him to 'Fitness for Duty' exam." (Am. Compl. ¶ 90, ECF No. 16.)

First, "'[a] request that an employee obtain a medical exam may signal that an employee's job performance is suffering, but that cannot itself prove perception of a disability . . . .'" *Pena v. City of Flushing*, 651 F. App'x 415, 420 (6th Cir. 2016) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999)). Accordingly, the mere fact that Khatri was required to undergo a fitness for duty examination does not itself lead to the conclusion that OSU perceived him as

disabled. Khatri does not provide any additional facts to support his claim that he was perceived as disabled.

Even if this Court were to assume the veracity of Khatri's allegation that OSU perceived him as disabled, Khatri fails to demonstrate that he suffered an adverse employment action because of this perceived disability. Undergoing a fitness for duty examination is not an adverse employment action – no materially adverse changes in the terms or conditions of his employment occurred, which is made particularly evident as he returned to his previous work duties after the fitness for duty examination in January 2017. Any adverse employment action Khatri suffered was his termination in spring 2018. However, Khatri does not plead a logical bridge between the alleged perceived disability and this adverse employment action. In other words, Khatri does not plausibly plead his termination was because of any perceived disability. In fact, Khatri alleges that in late 2017 he filed a complaint against his supervisor reiterating his belief that he was being retaliated against for raising the alleged misuse of federally regulated infectious agents and, as a result, was placed on a PIP. Khatri alleges noncompliance with the PIP was cited as the reason for termination. Nowhere in this string of events leading directly to his termination is any disability, perceived or otherwise, mentioned. Accordingly, Khatri has failed to plausibly plead both that he was perceived as disabled and that his termination from OSU was because of this perception. For these reasons, Khatri's objection to the Magistrate Judge's conclusion to this effect is OVERRULED.

2. *Family Member's Disability*

The ADA specifically prohibits employers from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To prevail on the theory that an employee suffered an adverse employment action due to

association with a disabled relative, the employee must demonstrate that (1) he was qualified for the position; (2) that his employer subjected him to an adverse employment action; (3) that his employer knew his relative had a disability; and (4) that the adverse employment action "raises a reasonable inference that the disability of the relative was a determining factor in the decision." *Sansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).

The fault line that Khatri reaches, once again, is that he has not plausibly pled that any adverse employment action he suffered was because of his son's disability. In other words, even assuming that OSU was aware Khatri's son was disabled, Khatri has not plausibly pled a reasonable inference that he was terminated because of his son's disability. Although Khatri alleges that OSU employees made repeated comments regarding his need to maintain employment and associated health insurance benefits to care for his son, Khatri does not connect these sporadic comments to the adverse employment action he suffered – his termination. In fact, as discussed above, Khatri connects his termination to his continued complaints regarding retaliation he believed he was experiencing as a result of reporting the alleged misuse of federally regulated infectious agents and the PIP placed upon him. Accordingly, Khatri has failed to plausibly plead that his termination from OSU was because of his son's disability. For these reasons, Khatri's objection to the Magistrate Judge's conclusion to this effect is OVERRULED.

In sum, even without discussions of immunity for OSU or the individually named defendants, Khatri has failed to plausibly plead a prima facie case of disability discrimination under either the ADA or the Rehabilitation Act such that these claims in his amended complaint could survive Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. Given these conclusions, Khatri's objections to the Magistrate Judge's Report and Recommendation with respect to his ADA and Rehabilitation Act claims are OVERRULED and Defendants' motion to dismiss Khatri's claims

that OSU and the individual defendants discriminated against him because he was perceived as disabled or because of his son's disability, in violation of the ADA and the Rehabilitation Act, is GRANTED.

## C. The Title VII Claims

In his amended complaint, Khatri alleges that OSU and each individual defendant, except Rajashekara, discriminated against him due to religion and national origin in violation of Title VII. With respect to these claims, the Magistrate Judge recommended: (1) dismissal of the claims against Benfield and Siegfried for failure to state a claim; and (2) dismissal of the claims in whole as they are untimely. (R. & R. 23-28, ECF No. 49.) Khatri objects to the recommendation that his claims brought pursuant to Title VII are untimely. (Objections to R. & R. 23-30, ECF No. 52.)

Typically, "the timely filing of a charge of discrimination with the EEOC is a condition precedent to a Title VII lawsuit." *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 407 (6th Cir. 1999). Under Ohio law in conjunction with federal law, for a claim to be timely filed with the EEOC, it must be filed "within 300 days of the alleged discriminatory act." *Id.* (citing 42 U.S.C. § 2000e-5(e); *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 837 n.5 (6th Cir. 1998)).

Khatri filed his EEOC charge on May 14, 2018. From this date, the 300-day statute of limitations precludes consideration of any allegedly discriminatory acts based upon religion or national origin which occurred prior to July 18, 2017. Markedly absent from Khatri's amended complaint are any factual allegations that discuss his religion or national origin after July 18, 2017. In fact, in liberally reading Khatri's amended complaint, as the Magistrate Judge did, "all of the occurrences that remotely concern possible religious or national origin discrimination occurred as early as 2008 and as late as 2014, which fall well outside the scope of the statute of limitations." (R. & R. 23-25, ECF No. 49.)

Although Khatri argues he "suffered continuous discrimination based on his religion over a period of several years," he fails to support this conclusory argument with factual material contained in his amended complaint. (Objections to R. & R. 23, ECF No. 52.) In fact, Khatri spends pages in his objections rehashing the factual material contained in his amended complaint, some of which is related to his religion and national origin, but most of which is not. (*Id.* at 23-30.) And none of what Khatri recites serves to negate the Magistrate Judge's conclusion that Khatri's claims of religious discrimination and national origin discrimination pursuant to Title VII are untimely. Accordingly, Khatri's objection to the Magistrate Judge's recommendation that this Court find his claims of discrimination due to religion and national original as untimely is OVERRULED and Defendants' motion to dismiss Khatri's claims that OSU and the individual defendants discriminated against him due to his religion and national origin, in violation of Title VII, is GRANTED.

## IV.    CONCLUSION

In conclusion, Khatri's objections to the Magistrate Judge's Report and Recommendation were untimely by law. However, in the interest of finality for this matter, after full legal analysis and due consideration, this Court OVERRULES each of Khatri's objections to the Magistrate Judge's Report and Recommendation. (Objections to R. & R., ECF No. 52.) For all of the reasons included in this Memorandum of Opinion and Order, including the conclusions that Khatri's speech was not protected by the First Amendment resulting in the conclusion that Khatri did not plausibly plead a prima facie case of First Amendment retaliation, that Khatri did not plausibly plead a prima facie case of disability discrimination pursuant to either the ADA or Rehabilitation Act, and that Khatri's claims for religious and national origin discrimination were untimely, this Court, once again, DENIES OSU's motion for partial judgment on the pleadings as MOOT (OSU's Mot. J. on

Pleadings, ECF No. 10), GRANTS Defendants' motion to dismiss Khatri's amended complaint (Mot. to Dismiss, ECF No. 25), and DENIES Khatri's motion for partial judgment on the pleadings (Pl's Mot. J. on Pleadings, ECF No. 31).

Accordingly, all federal claims against OSU and all individually named defendants remain DISMISSED WITH PREJUDICE. Furthermore, this Court declines to extend supplemental jurisdiction to any of Khatri's state law claims, which, therefore, remain DISMISSED WITHOUT PREJUDICE.

Finally, this Opinion and Order renders Khatri's pending motions DENIED as MOOT. (Mot. for Ruling, ECF No. 58; Second Mot. for Ruling, ECF No. 60; Third Mot. for Ruling, ECF No. 67.). Given this disposition, no claims or issues remain between the parties. Therefore, this matter is hereby DISMISSED in its entirety.

IT IS SO ORDERED.

DATE: February 9, 2021                    /s/ John R. Adams_____
                                         Judge John R. Adams
                                         UNITED STATES DISTRICT COURT